UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 1:15-cv-00046-TWP-DML ) ) |
| MIDWEST ENVIRONMENTAL SERVICES, INC. OF INDY and CENTRAL ASBESTOS SERVICES LLC, | ) ) ) ) |
| Defendants. | ) |

## Report and Recommendation on Central Asbestos's Motion to Dismiss

Before the court for a report and recommendation on its appropriate disposition is a motion to dismiss filed by defendant Central Asbestos Services LLC ("Central Asbestos"). As addressed below, the Magistrate Judge recommends that the District Judge DENY the motion to dismiss.

The court will first outline the allegations of the plaintiff's complaint against Central Asbestos, then set forth the guiding standards of review, and finally evaluate whether Zurich's allegations state a claim upon which relief can be granted.

## Analysis

**A.  The complaint seeks relief against Central Asbestos under fraudulent transfer and alter ego/control theories.**

Plaintiff Zurich American Insurance Company ("Zurich") issued two policies of workers compensation and employers liability insurance to Central Asbestos's co-

defendant, Midwest Environmental Services, Inc. of Indy ("Midwest").¹ (Complaint, Dkt. 1, ¶¶ 8-9). The first had an effective date of September 1, 2008, to September 1, 2009, and the second had an effective date from September 1, 2010, to September 1, 2011. As provided by each Policy, an initial premium was assessed and paid at the inception of the Policy, but the total premium owed by the insured was to be determined after a post-expiration audit of the insurer's exposure to risk during its term based on the insured's payroll during the term. (*Id.,* ¶ 13). A post-expiration audit can result in the insured owing additional premiums, or in the insurer's refunding overpaid premiums. (*Id.*) Zurich's post-expiration audits for the Policies resulted in additional total premiums of $122,224 owed by Midwest. (*Id.* ¶ 15). Midwest did not pay the premiums. (*Id.* ¶ 16).

Zurich's claims against Central Asbestos arise out of Central Asbestos's relationship with Midwest. The complaint fashions two theories for seeking to collect from Central Asbestos the premiums Midwest failed to pay under the Policies: a fraudulent transfer theory (*id.,* ¶¶ 28-35) and an alter ego/control/piercing the corporate veil theory (*id.,* ¶¶ 36-45).

The fraudulent transfer theory is based on allegations Midwest conveyed assets to Central Asbestos for less than reasonably equivalent value at a time Midwest was insolvent, or which caused Midwest to become insolvent, with the

---

¹ A default judgment in the amount of $122,224 was entered against Midwest on July 29, 2015. (Dkt. 33).

intent to avoid the debt Midwest expected to incur because of the post-expiration premium audits.

The alter ego/piercing the corporate veil theory is grounded in allegations that (a) Central Asbestos is Midwest's parent company and exercises control over it and/or (b) Central Asbestos and Midwest do not genuinely have separate existences, are alter egos, and use each other to evade legal obligations and perpetrate fraud, including through Midwest's alleged conveyance of assets to Central Asbestos for less than fair value with the intent to avoid the debt to Zurich.

**B.     Several pleading principles guide the court's review.**

Several pleading principles are pertinent to the resolution of Central Asbestos's Rule 12(b)(6) motion to dismiss.  The general plausibility standard for testing whether a complaint states a claim on which relief can be granted is, of course, applicable.  Under that standard, the court accepts as true all well-pleaded facts and reasonable inferences to be drawn from them and determines whether the complaint states "'a claim to relief that is plausible on its face.'" *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007)).  A complaint must contain enough factual detail "to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through [the] allegations, show that it is plausible, rather than merely speculative, that [the plaintiff] is entitled to relief." *Defender Security Co. v. First Mercury Ins. Co.,* 803 F.3d 327, 335 (7th Cir. 2015) (internal citations and quotations omitted).

Because Zurich's theories for relief allege at least in part that Central Asbestos participated in fraudulent conduct designed to permit Midwest to evade its legal obligations and otherwise to perpetrate fraud against Midwest's creditors, the complaint also must satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (Rule 9(b) applies to a claim that is based on allegations of fraud, even if the claim is not itself a fraud tort). Rule 9(b) requires a plaintiff to allege the "who, what, where, when, and how" of the fraudulent conduct. *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). The particularity requirements are designed to ensure that a plaintiff does its pre-suit homework and can responsibly allege fraud and to ensure that a defendant is given fair notice of its purported role in alleged fraud. *See Borsellino,* 477 F.3d at 507 (because fraud claims can ruin reputations, plaintiff is required to do more pre-complaint investigation than it might otherwise have to do so that a claim of fraud is responsibly made and supported and is not defamatory and extortionate); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.,* 631 F.3d 436 (7th Cir. 2010) (particularity requirement forces a plaintiff to make a careful pre-complaint investigation).

The particularity requirements can be relaxed, however, where the plaintiff can show that the "details are within the defendant's exclusive knowledge," *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir. 1994), or otherwise not obtainable without pretrial discovery. *Emery v. American General Finance, Inc.,* 134 F.3d 1321,

4

1323 (7th Cir. 1998) (Rule 9(b) can be satisfied if the plaintiff shows it cannot obtain the essential information to plead more specifically without pretrial discovery).

The final pleading principle germane to analyzing Central Asbestos's motion to dismiss is the court's ability to consider new factual allegations made by Zurich in opposing the motion, even though not contained in the complaint, so long as they are consistent with the complaint. *Bible v. United States Aid Funds, Inc.,* 799 F.3d 633, 640 n. 1. (7th Cir. 2015) (new facts may be asserted in opposing a motion to dismiss).

### C.   Zurich's opposition to the motion to dismiss sufficiently supplements its bare-bones pleading, making dismissal inappropriate.

Were the court to consider only the allegations in the complaint to test whether a claim for relief has been stated, the complaint should be dismissed. Its allegations regarding Central Asbestos are bare-bones, conclusory, and made "on information and belief" with nary a hint of the basis for that information and belief. The complaint asserts, based on "information and belief," that Midwest transferred assets to Central Asbestos for less than reasonably equivalent value, at a time when Midwest was insolvent or would become insolvent by the transfer, and with the intent or effect of defrauding Zurich.  Complaint, ¶¶ 30-34.  Zurich also asserts, based on "information and belief," that Central Asbestos is either Midwest's parent company, or it exercised complete dominion and control over Midwest, or otherwise acted as an alter ego of Midwest and should be liable for Midwest's debts to avoid the perpetration of fraud on Zurich.  *Id.* ¶¶ 37-41.  The only apparent *fact* within

the complaint underlying these allegations is that Central Asbestos and Midwest share (or shared) a business address.

The lack of factual information has been substantially cured, however, by Zurich's opposition to the motion to dismiss. Zurich contends it was unable to allege more detailed information about the relationships between Central Asbestos and Midwest and the transfer of assets out of Midwest to avoid the debt to Zurich because that information is exclusively in Central Asbestos's and Midwest's control. Indeed, information provided by Central Asbestos by affidavit as part of its motion to dismiss bolsters Zurich's contention it cannot reasonably allege more than it did in its complaint without discovery. The affidavit is offered by Central Asbestos to explain that Midwest is a family business owned by a father and Central Asbestos is owned by the son, and to prove that the companies had and have separate existences and never shared common ownership. The affidavit shows, though, that (a) the father and son have served as directors of each other's company; (b) the son worked for the father's business and Central Asbestos at the same time (even though they are direct competitors) and until Central Asbestos was paid on its first job; (c) Midwest's employees moved over to Central Asbestos when Midwest's business operations "essentially ceased," and (d) Central Asbestos bought some assets from Midwest. This is the very type of inside information Zurich should be permitted to explore in discovery.

Moreover, the new information offered by Central Asbestos provides Zurich with some factual foundation for its fraudulent transfer and alter ego/control

theories.  Zurich maintains it is not mere coincidence that "Midwest, a family owned and operated company became indebted to [Zurich] and then became insolvent when the bills came due while Central [Asbestos], a company admittedly owned and operated by the same family, located in the same office, using the same employees, doing the exact same business, suddenly became a successful business."  (Dkt. 22 at p. 11).  These facts—contends Zurich—raise a reasonable inference to support its allegations that Midwest was manipulated to become insolvent to avoid creditors while Central Asbestos succeeded or gained control over Midwest's assets, employees, and business.

Central Asbestos did not file a reply brief and has not provided any reason the court should not consider the new facts alleged by Zurich in its response brief or should not accept Zurich's argument that it cannot plead more facts without pre-trial discovery.

The court is persuaded by Zurich's showing in its response brief of the existence of facts (*see, e.g.,* Dkt. 22 at pp. 9-10) plausibly supporting its fraudulent transfer and alter ego/control theories and its inability to make more detailed allegations because the salient information is within Central Asbestos's and Midwest's control, for which pretrial discovery is necessary.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge DENY Central Asbestos's motion to dismiss (Dkt. 18).  Any objections to this Report and Recommendation must be filed in accordance with 28

U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  The parties should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated:  December 21, 2015

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

Via United States mail:

Midwest Environmental Services, Inc. of Indy
c/o Rodolfo Funez
8807 Darkwood Drive
Indianapolis, IN  46234